United States District Court
Southern District of Texas
FILED

APR 2 6 2002

Michael N. Milby
Clerk of Court

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

RICHARD DWORAK, §
§
Plaintiff, §
§ CIVIL ACTION NO. B-02-020
v. §
§
AMERICAN RED CROSS AND § JURY DEMANDED
HENRY MARTINEZ, §
§
Defendants. §

---

### MOTION FOR LEAVE TO FILE MEMORANDUM IN SUPPORT OF
### MOTION TO TRANSFER VENUE OF THE AMERICAN NATIONAL RED CROSS

---

The American National Red Cross, (the "Red Cross"), incorrectly named as American Red Cross, one of the Defendants, pursuant to the Rules of this Court files this motion for leave to file Memorandum in Support of Motion to Transfer Venue and shows as follows:

**INTRODUCTION**

1. On February 7, 2002, the Red Cross filed its motion to transfer venue and answer to this civil action. It informed this Court that it intended to file a memorandum in support of the motion to transfer venue and accompanying affidavits.

**ARGUMENT**

2. Since the date the Red Cross filed its motion to transfer venue and answer, it and the undersigned has attempted in earnest to locate Mr. Henry Martinez, a defendant in this case that plaintiff has thus far failed to serve with the suit. Despite nearly constant efforts to locate

1

Mr. Martinez, the Red Cross and the undersigned have been unsuccessful. It was this attempt to locate Mr. Martinez that has caused the delay in filing the memorandum in support of the motion to transfer venue.

      3.     The Red Cross has already filed its motion to transfer venue which is supported by the allegations in the plaintiff's petition. The memorandum in support of the motion to transfer venue (attached as Exhibit A) details facts and law pertinent to this case, both of which establish compelling arguments favoring transfer. So that this Court has a complete record and a fully-briefed motion, the Red Cross requests that this Court grant it leave to file the attached memorandum in support of its previously filed motion to transfer venue.

      4.     Plaintiff has not yet replied to the Red Cross' motion to transfer venue within the deadline in this Court's rules; thus, at this early stage in the litigation no prejudice or additional briefing on plaintiff's part will be necessitated by granting the Red Cross leave to supplement. The factual issues and the law are set out in detail in the attached Memorandum in Support of the Motion to Transfer of Venue; and, the Red Cross requests that this Court, in the interests of justice, consider that memorandum before ruling on the Red Cross' motion to transfer venue.

## PRAYER

For these reasons, the Red Cross respectfully prays that this Court grant it leave to file the attached memorandum in support of the its motion to transfer venue and for all other just relief.

Respectfully submitted,

WATT, BECKWORTH & THOMPSON, L.L.P.

BY: _____
John B. Beckworth
State Bar #02021500
Fed. I.D. #1546
1010 Lamar, Suite 1600
Houston, Texas 77002
Telephone: 713/650-8100
Facsimile: 713/650-8141

*Attorney-in-Charge for*
*The American National Red Cross, Defendant*

OF COUNSEL:

Neal Nobles
State Bar #24007753
Fed. I.D. #23078
WATT, BECKWORTH & THOMPSON, L.L.P.
1010 Lamar, Suite 1600
Houston, Texas 77002
Telephone: 713/650-8100
Facsimile: 713/650-8141

3

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent to all known counsel of record via certified U.S. mail, return receipt requested, this _24th_ day of _April_, 2002.

R.W. Armstrong
R.W. Armstrong & Associates, Inc.
2600 Old Alice Road, Suite A
Brownsville, Texas  78521

Mr. Michael R. Cowen
Michael R. Cowen, P.C.
765 E. 7th Street, Suite A
Brownsville, Texas  78520-5317

_____
John B. Wheatworth

A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RICHARD DWORAK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. B-02-020 |
| v. | § | |
| | § | |
| AMERICAN RED CROSS AND | § | JURY DEMANDED |
| HENRY MARTINEZ, | § | |
| | § | |
| Defendants. | § | |

---

## MEMORANDUM IN SUPPORT OF
## MOTION TO TRANSFER VENUE OF THE AMERICAN NATIONAL RED CROSS

---

WATT, BECKWORTH & THOMPSON, L.L.P.

John B. Beckworth
State Bar #02021500
Fed. I.D. #1546
1010 Lamar, Suite 1600
Houston, Texas  77002
Telephone:  (713) 650-8100
Telecopier:  (713) 650-8141

Attorney-in-Charge for
The American National Red Cross, Defendant

OF COUNSEL:

Neal Nobles
State Bar #24007753
Fed. I.D. #23078
WATT, BECKWORTH & THOMPSON, L.L.P.
1010 Lamar, Suite 1600
Houston, Texas  77002
Telephone: 713/650-8100
Facsimile: 713/650-8141


April 24, 2002

## TABLE OF CONTENTS

TABLE OF CONTENTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT OF THE ISSUE TO BE RULED UPON BY THIS COURT . . . . . . . . . . . . . . . v

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING . . . . . . . . . . . . . vii

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
    A. Venue in Florida is Proper . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
    B. Private Interest Factors Favor Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
        1. Convenience of Key Witnesses Favors Transfer . . . . . . . . . . . . . . . . . . . . . 5
        2. Availability of Key Live Witnesses Favors Transfer . . . . . . . . . . . . . . . . . . . 6
        3. Transfer to Florida will Reduce Litigation Costs Associated
           with Obtaining Crucial Witness Testimony . . . . . . . . . . . . . . . . . . . . . . . 7
        4. The Location of the Alleged Wrong Weighs Heavily in Favor of
           Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
        5. Plaintiff's Choice of Forum Entitled to Little Weight . . . . . . . . . . . . . . . . . . 8
        6. Possibility of Delay and Prejudice is Reduced by Transfer to Florida . . . . . . 10
    C. Public Interest Factors Favor Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        1. Transfer Avoids the Inefficiency Attendant to Duplicate Suits Favors
           Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
        2. Florida's Overwhelmingly Greater Interest in this
           Local Controversy Favors Transfer . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        3. The Burden on a Disinterested Texas Jury Favors Transfer to Florida . . . . . 13
        4. Florida Court's Familiarity with Governing Law Favors Transfer . . . . . . . . . 13

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

# TABLE OF AUTHORITIES

<u>**CASES**</u>

*Andrade v. Chojnacki*, 934 F.Supp. 817 (S.D. Tex. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Casarez v. Burlington Northern/Santa Fe*,
193 F.3d 334 (5th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

*Continental Airlines, Inc. v. American Airlines, Inc.*,
805 F.Supp. 1392 (S.D.Tex. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Crisman v. Cooper Industries, Inc.*, 748 S.W.2d 273
(Tex. App.-Dallas 1988, writ denied) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Dearing v. Sigma Chem. Co.*,
1 F.Supp.2d 660 (S.D. Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*Ferens v. John Deere Co.*, 494 U.S. 516;
110 S.Ct. 1274 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Gulf Oil Corp. v. Gilbert*, 330 U.S. 501,
67 S.Ct. 839 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Hernandez v. Graebel Van Lines*,
761 F.2d 983 (E.D.N.Y. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 13

*Houston Trial Reports, Inc. v. LRP Publications, Inc.*,
85 F.Supp.2d 663 (S.D. Tex. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 3, 5, 7, 8, 10, 11

*In re Air Disaster at Ramstein Air Base Germany*,
81 F.3d 570 (5th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Jarvis Christian College v. Exxon Corp.*,
845 F.2d 523 (5th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295 (5th Cir. 1963) . . . . . . . . . . . . . . . . . . . 3, 10, 13

*Kreisner v. Hilton Hotel Corp.*,
468 F.Supp. 176 (E.D.N.Y. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*LeBouef v. Gulf Operators, Inc.*,
20 F.Supp.2d 1057 (S.D. Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

*M.P. Paul v. International Precious Metals Corp.*,
613 F.Supp.174 (S.D. Miss. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*McBee v. Howe*, 1989 WL 28680,*3(D.N.J. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*McGinnis v. Eli Lilly and Co.*, -- F.Supp.2d --,
2002 WL 75660, *3 (S.D.Tex. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Morgan v. Illinois Central RR Co.*,
161 F.Supp. 119 (S.D. Tex. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Mortensen v. Maxwell House Coffee Co.*,
879 F.Supp. 54 (E.D. Tex. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Polaroid Corp. v. Casselman*,
213 F. Supp 379 (S.D. New York 1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Robertson v. M/V CAPE HUNTER*,
979 F.Supp. 1105 (S.D. Tex. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 10

*Stabler v. New York Times Co.*, 569 F.Supp. 1131 (S.D. Tex. 1983) . . . . . . . . . . . . . . . . . . . . 2

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,
108 S.Ct. 2239 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*TV-3, Inc. v. Royal Ins. Co. of America*,
28 F.Supp.2d 407 (E.D.Tex. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9, 12, 13

*Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805 (1964) . . . . . . . . . . . . . . . . . . . . . . . . 2, 13

*Walter E. Heller & Co. v. James Godbe Co.*,
601 F.Supp. 319 (N.D. II 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

## STATUTES AND RULES

28 U.S.C. § 1391 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

28 U.S.C. § 1391(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1391(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1404(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v, 2, 4, 9

28 U.S.C. § 1404(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

28 U.S.C. § 1441(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

28 U.S.C. § 1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

## STATEMENT OF THE ISSUE TO BE RULED UPON BY THIS COURT

The only issue to be ruled upon by this Court in the motion to transfer venue and this memorandum in support of that motion is whether, for the convenience of the parties and witnesses and in the interest of justice, this Court should transfer this civil action to the Southern District of Florida, Miami Division. The supporting authority for the motion and this memorandum in support thereof is 28 U.S.C. § 1404(a) and the cases cited in this memorandum. The standard of review in this case is an abuse of discretion. *Casarez v. Burlington Northern/Santa Fe*, 193 F.3d 334, 339 (5th Cir. 1999).

## SUMMARY OF THE ARGUMENT

This Court should transfer this civil action to the Southern District of Florida, Miami Division for the convenience of the parties, witnesses, and in the interest of justice. The alleged accident that is the basis of this suit occurred in Miami, Florida. Henry Martinez, the driver of the vehicle in this alleged one-car accident is a Florida resident. Mr. Martinez is also the key witness for the Red Cross. It is doubtful that a Texas court will have personal jurisdiction over Mr. Martinez; additionally, no party to this suit can compel a Florida resident to appear live at trial in Brownsville, Texas. Transferring venue to Florida will eliminate the possibility of duplicate lawsuits, be more efficient, waste less court resources, place the burden of jury duty on those citizens with the paramount interest, and allow the state with the predominant interest to sit in judgment of this case.

## STATEMENT OF THE NATURE AND STAGE OF THE PROCEEDING

This memorandum is in support of the Red Cross' previously filed motion to transfer venue, which is the Red Cross' formal pleading requesting this Court to transfer venue this civil action to the Southern District of Florida, Miami Division. This case has recently been removed from state court. On February 11, 2002, this Court issued an Order Setting Conference for June 4, 2002. This case has not been set for trial.

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| RICHARD DWORAK, | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. B-02-020 |
| v. | § | |
| | § | |
| AMERICAN RED CROSS AND | § | JURY DEMANDED |
| HENRY MARTINEZ, | § | |
| | § | |
| Defendants. | § | |

---

## MEMORANDUM IN SUPPORT OF
## MOTION TO TRANSFER VENUE OF THE AMERICAN NATIONAL RED CROSS

---

TO THE HONORABLE JUDGE OF SAID COURT:

The American National Red Cross (the "Red Cross"), incorrectly named as American Red

Cross, one of the Defendants, files this memorandum in support of its previously filed motion to

transfer venue and respectfully shows as follows:

### I. INTRODUCTION

1.    Plaintiff is Richard Dworak; Defendants are the Red Cross and Henry Martinez.[1]

2.    This is a negligence case in which Mr. Dworak has sued the Red Cross and

Mr. Martinez for injuries he allegedly suffered as a result of a one vehicle incident in Miami, Florida.

Mr. Dworak and Mr. Martinez, both Red Cross volunteers at the time, were in Miami, Florida

assisting local residents in the wake of Hurricane Irene when the accident occurred. Mr. Martinez

---

[1]    Plaintiff has not yet served defendant Henry Martinez.

1

was driving a Red Cross Emergency Response Vehicle (an "ERV"), and Mr. Dworak was his passenger–both men were delivering food to residents in the Miami, Florida area.   According to Mr. Dworak's petition (attached as Exhibit A), Mr. Martinez negligently "swerved" the ERV.  The sudden movement of the ERV allegedly caused some food trays placed in the rear of the ERV to dislodge and strike Mr. Dworak.

3.       Mr. Dworak originally filed this suit in the 103rd District Court of Cameron County. Pursuant to 28 U.S.C. § 1441, the Red Cross removed the case to the Southern District of Texas, Brownsville Division, and this Court.  The Red Cross requests that this Court transfer this civil action to the Southern District of Florida, Miami Division for the convenience of the parties and witnesses and in the interests of justice.

## II.  ARGUMENT

4.       Congress provided federal district courts with the discretion to transfer certain cases when, for the convenience for the parties and witnesses and in the interests of justice, another venue was more convenient.  *See* 28 U.S.C. §1404(a).  Section 1404(a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Many courts have recognized that this discretionary transfer exists to "protect litigants, witnesses, and the public against unnecessary inconvenience and expense, and to avoid wasted time, energy and money." *Houston Trial Reports, Inc. v. LRP Publications, Inc.*, 85 F.Supp.2d 663, 667 (S.D. Tex. 1999) *quoting Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S.Ct. 805 (1964); *see also Stabler v. New York Times Co.*, 569 F.Supp. 1131, 1137 (S.D. Tex. 1983).

5.       The decision to transfer this case is committed to the sound discretion of the district

2

court. *See Jarvis Christian College v. Exxon Corp.*, 845 F.2d 523, 528 (5th Cir. 1988); *Houston Trial Reports*, 85 F.Supp.2d at 667. When deciding whether it should transfer this case, the court must weigh a number of well-established factors in light of the specific facts of the pending case. *See Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239 (1988); *see also Houston Trial Reports*, 85 F.Supp.2d at 668. These factors can be divided into two groups: public interests and private interests. The private interests relate to the preferences of the parties and the witnesses, including: (1) the availability of and convenience of the witnesses and the parties; (2) the costs of obtaining the attendance of witnesses; (3) the location of books and records; (4) the location of the alleged wrong; (5) the plaintiff's choice of forum; (6) the possibility of delay and prejudice if transfer is granted; and, (7) the location of counsel. *See Houston Trial Reports*, 85 F.Supp.2d at 668; *LeBouef v. Gulf Operators, Inc.*, 20 F.Supp.2d 1057, 1059 (S.D. Tex. 1998); *Dearing v. Sigma Chem. Co.*, 1 F.Supp.2d 660, 664 (S.D. Tex. 1998). The public interest factors are broader, more policy-oriented considerations, including: (1) the fair and efficient administration of justice; (2) the local interest in having local controversies resolved at home; (3) the potential to burden with jury duty the citizenry of a venue unrelated to the controversy. *See Koehring Co. v. Hyde Constr. Co.*, 324 F.2d 295, 296 (5th Cir. 1963); *Houston Trial Reports*, 85 F.Supp.2d at 668. After carefully considering the appropriate factors, this Court will find that they and the specific facts herein weigh heavily in favor of transfer.

### A.  Venue in Florida is Proper

6.     As a threshold matter, before a transfer is proper, a case must satisfy certain threshold conditions. First, transfer of venue under § 1404 is proper only if the transferor court is a proper venue for the case. 28 U.S.C. § 1404(b). According to the removal statute, §1391, venue for

3

removed actions is proper in "the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. §1441(a). The Southern District of Texas is the district embracing the place where the state court action was pending; therefore, the § 1441(a) analysis, the Southern District of Texas is a proper venue. *See id.*

7.    The second threshold matter required by § 1404(a) is that the prospective transferee court (here, the Southern District of Florida, Miami Division) should be located in a district or division where the case "might have been brought". The Southern District of Florida, Miami Division is just such a division and district. This transferee venue satisfies the requisites of § 1404(a) because it would have been a proper venue for this action under the venue statute, 28 U.S.C. §1391, and both defendants are subject to personal jurisdiction in that District. Venue would be proper there under § 1391(b)(1), because the Red Cross, the only served defendant, resides in Florida; also, it would be proper under § 1391(b)(2), because the Southern District of Florida is the district in which a substantial part of the events or omissions giving rise to the claim allegedly occurred. (See Exhibit A). Moreover, the district court in the Southern District of Florida has personal jurisdiction of both defendants–Henry Martinez, according to plaintiff's pleading, resides in Miami, Florida; and the Red Cross was present in Miami, Florida at the time of the alleged accident that is the basis of this suit and submits to its exercise of personal jurisdiction.

### B.   Private Interest Factors Favor Transfer

8.    The private interest factors that are considered in a motion to transfer venue are as follows:  (1) the availability of and convenience of the witnesses and the parties; (2) the costs of obtaining the attendance of witnesses; (3) the location of books and records; (4) the location of the alleged wrong; (5) the plaintiff's choice of forum; (6) the possibility of delay and prejudice if transfer

4

is granted; and, (7) the location of counsel. *See Houston Trial Reports*, 85 F.Supp.2d at 668; *LeBouef*, 20 F.Supp.2d at 1059; *Dearing*, 1 F.Supp.2d at 664. All of the private interest factors, except the plaintiff's choice of forum and the location of counsel, weigh overwhelmingly in favor of transfer.

### 1. Convenience of Key Witnesses Favors Transfer

9.     Though none of the private or public interest factors are, by themself, dispositive, several are traditionally accorded more weight than others. Of these factors, the "most important" is the convenience of the key witnesses. *See McGinnis v. Eli Lilly and Co.*, -- F.Supp.2d –, 2002 WL 75660, *3 (S.D.Tex. 2002); *Houston Trial Reports*, 85 F.Supp.2d at 668 (stating that the convenience of the key witnesses is "'arguably the most important of the factors...'" *quoting LeBouef*, 20 F.Supp.2d at 1060; *TV-3, Inc. v. Royal Ins. Co. of America*, 28 F.Supp.2d 407, 412 (E.D.Tex. 1998)(stating that the costs associated with bringing a key witness to the venue and the availability of compulsory process for the attendance of unwilling witnesses are "very important, possibly even the most important of the list of factors."). The only proper, convenient forum is the Southern District of Florida.

10.     The key witness for the Red Cross is Henry Martinez. According to Mr. Dworak's pleading, Mr. Martinez was the driver of the ERV at the time of the alleged accident. (See Exhibit A). According to Mr. Dworak's pleading, Mr. Martinez is a Florida resident. (See Exhibit A). It is obvious that traveling from Miami, Florida to Brownsville, Texas would be inconvenient.[2] Traveling by plane presumes travel to, from, and through no less than least two busy

---

[2]     Though district courts in the Southern District have held that the convenience of a defendant's *employees* is accorded little weight in the transfer calculus, *Continental Airlines, Inc. v. American Airlines, Inc.*, 805 F.Supp. 1392, 1397 (S.D.Tex. 1992), Mr. Martinez is not an employee of the Red Cross; he was a volunteer at the time of the incident. He is not presently a volunteer with the Red Cross. Consequently, unlike the defendant in *Continental Airlines*, the Red Cross has no employer/employee relationship at its disposal to persuade Mr. Martinez to travel to

airports. Then, the witness is subject to the delays routine to present-day air travel. Traveling by bus

or personal automobile, while possibly less expensive, takes an inordinately longer period of time

and would impose a far greater burden and inconvenience. All of these choice are inconvenient and

burdensome because they would require travel to a distant court. The severe inconvenience attendant

to Mr. Martinez traveling from Florida to Texas weighs in favor of transfer.

## 2. Availability of Key Live Witnesses Favors Transfer

11.    Where credibility of witnesses is an issue, a party's inability to obtain the *live*

testimony of its crucial witness weighs heavily in favor of transfer. *See Walter E. Heller & Co. v.*

*James Godbe Co.*, 601 F.Supp. 319, 322 (N.D. Il 1984)(stating "the use of depositions would not

be an adequate substitute for live testimony."). Here, Mr. Martinez is the Red Cross' crucial witness;

and it is powerless to compel his live testimony in federal court in Brownsville, Texas.

12.    Typically, the court might receive affidavits supporting a motion to transfer venue

that summarize the potential testimony of key witnesses. However, without wedding itself to

Mr. Martinez' specific testimony, the Red Cross can only assume that his testimony would provide

the only other account of what happened on October 30, 1999, the date of the alleged accident. If

his testimony differs from Mr. Dworak's, Mr. Martinez' credibility will be subject to the jury's

sharp, focused scrutiny. Mr. Martinez is likely the only person who can explain if he swerved the

ERV, and if so, why. He may also be able to discuss whether Mr. Dworak was performing his tasks

in a reasonable manner. Specifically, Mr. Martinez may testify that Mr. Dworak was not stowing

the plastic food trays properly and the improper stowage of the trays was the cause of Mr. Dworak's

alleged injuries. Because Mr. Dworak and Mr. Martinez were the only people in the ERV at the time

---

Brownsville, Texas.

of the alleged maneuver, conflicts in their testimony will only be resolved by the jury based on the credibility of the witnesses. Justice would require that the Red Cross be allowed to present and the jury hear live testimony of Mr. Martinez.

13.     However, should Mr. Martinez be unwilling to appear before this Court, the Red Cross will have no means to compel his live attendance at trial. If Mr. Martinez does not appear live at trial, the Red Cross will be at a severe disadvantage. The United State Supreme Court warned of the danger caused by allowing trials in locations too remote from key witnesses: "to fix the place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory for the court, jury or most litigants." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 511, 67 S.Ct. 839 (1947). Another court accurately characterized the use of a depositions where credibility of the witnesses was at issue as "deadening and one-sided [and] a poor substitute for live testimony." *See Polaroid Corp. v. Casselman*, 213 F. Supp 379, 382 (S.D. New York 1962)(stating "there is nothing like the impact of live *dramatis personae* on the trier of facts."); *M.P. Paul v. International Precious Metals Corp.*, 613 F.Supp.174, 179 (S.D. Miss. 1985) (remarking that deposition testimony was "particularly unappealing" when compared to live testimony especially where credibility of the witness was at issue). The fact that the Red Cross and this Court is without the necessary procedural tools to compel Mr. Martinez' live appearance in federal court in Brownsville weighs heavily in favor of transfer to the Southern District of Florida, a court with such power.

### 3. Transfer to Florida will Reduce Litigation Costs Associated with Obtaining Crucial Witness Testimony

14.     This Court should transfer the case because it will reduce the costs attendant to the litigation. *See Houston Trial Reports*, 85 F.Supp.2d at 670; *Robertson v. M/V CAPE HUNTER*, 979

7

F.Supp. 1105, 1108 (S.D. Tex. 1997). Mr. Martinez is a crucial witness. Given that Mr. Martinez is a resident of Florida, it is intuitive that travel for him will be costly and time consuming. Mr. Martinez would be forced to disrupt his daily routine and travel to and from Texas to testify. He would be required to purchase airline tickets, bus tickets, train tickets, or drive by personal automobile to Brownsville, Texas. None of these modes of transportation is inexpensive. In addition, Mr. Martinez would be forced to bear the costs of lodging, food, and other unpredictable expenses associated with such a lengthy trip. Transferring this case to Miami, Florida will result in a reduction in the costs attendant to this litigation and reduce the high costs possibly forced upon a private citizen. This factor favors transfer.

### 4. The Location of the Alleged Wrong Weighs Heavily in Favor of Transfer

15.    The place where the alleged wrong occurred is another important factor in a transfer of venue determination. *See Robertson*, 979 F.Supp. at 1108 (stating location of tort is "perhaps the most important factor"); *Houston Trial Reports*, 85 F.Supp.2d at 665 (indicating that the locus of the tort is a "significant factor" courts should consider in the transfer analysis). The plaintiff alleges that the accident occurred in Florida. (See Exhibit A). Thus, the *only* locus of operative facts is located in Florida. Accordingly, the fact the accident occurred in Florida is a significant venue factor and weighs heavily in favor of transfer.

### 5. Plaintiff's Choice of Forum Entitled to Little Weight

16.    Plaintiff chose the state court in Brownsville, Texas as the forum for this action. Normally, the plaintiff's choice of forum is given deference, "especially when the forum is the plaintiff's home." *See Houston Trial Reports*, 85 F. Supp 2d at 670. However, the court should give less weight to the plaintiff's choice of forum when, as here, none of the alleged tortious conduct

occurred in the forum plaintiff selected. *See TV-3, Inc.*, 28 F.Supp.2d at 411; *Mortensen v. Maxwell House Coffee Co.*, 879 F.Supp. 54, 57 (E.D. Tex. 1995); *Morgan v. Illinois Central RR Co.*, 161 F.Supp. 119, 120 (S.D. Tex. 1958). At this stage of the litigation, the only facts upon which there rests a controversy occurred in Florida. All the parties to this dispute must rely upon evidence of acts or omissions arising entirely within the state of Florida.

17.     In a case strikingly similar to the one before this Court, a § 1404(a) motion to transfer was granted despite the fact the plaintiff filed the suit in his home forum. *See Hernandez v. Graebel Van Lines*, 761 F.2d 983, 985-86 (E.D.N.Y. 1991). In *Hernandez*, the plaintiff was involved in an automobile accident that occurred in Florida. The plaintiff filed suit in the Eastern District of New York, and both defendants requested that the district court transfer the case to Florida pursuant to § 1404(a). The court, in its analysis of the private and public factors, noted that ordinarily the plaintiff's choice of forum is given great weight in a transfer determination. *See id.* at 990. It noted, however, that the only connection the case had to New York was that it served as plaintiff's residence and the location of plaintiff's treating physicians. New York had no other connection to the facts giving rise to the lawsuit. *See id.* Based on those facts, the court transferred the case to Florida–reasoning that when the operative facts "had no material relation or significant connection to the plaintiff's chosen forum, the plaintiff's choice is not accorded the same 'great weight' and in fact is given reduced significance." *Id.* at 990.

18.     This Court is reviewing a case with an analogous geographic framework. Texas' only connection to this lawsuit is that it serves as the residence of plaintiff. The key witness, Henry Martinez is not a resident of Texas and cannot be compelled to come to Texas. Moreover, Mr. Martinez, most likely, is not subject to personal jurisdiction in Texas. The accident did not

occur in Texas, and the cause of the alleged swerve did not and does not exist in Texas. Consequently, this Court should accord plaintiff's choice of forum little weight in its analysis and transfer this civil action to the Southern District of Florida, Miami Division.

### 6. Possibility of Delay and Prejudice is Reduced by Transfer to Florida

19.     There will be no significant delay in this case if transfer is granted. Here, the plaintiff waited until the statute of limitations had almost run before he brought his suit. Surely, the short delay accompanying a venue transfer will not create prejudice. Additionally, the lawsuit is in such an early stage that there is little chance that a transfer of venue would create "appreciable delay or prejudice." *Mortensen*, 879 F.Supp. at 56. Moreover, transfer to Florida may actually hasten the progress of this case given the transferee court's proximity to the accident scene and the key witness. *See Robertson*, 979 F.Supp. at 1109.

20.     Additionally, and as discussed in detail below, the possibility that Mr. Dworak will have to litigate in Texas against the Red Cross and in Florida against Mr. Martinez would impose delay and prejudice that a transfer would eliminate. When applied to these facts, this private interest factor favors transfer.

### C.  Public Interest Factors Favor Transfer

21.     The public interest factors are broader, more policy-oriented considerations, and each of these factors favors transfer. The factors are: (1) the fair and efficient administration of justice; (2) the local interest in having local controversies resolved at home; (3) the potential to burden the citizenry of a venue unrelated to the controversy with jury duty. *See Koehring Co.*, 324 F.2d at 296; *Houston Trial Reports*, 85 F.Supp.2d at 668.

10

### 1. Transfer Avoids the Inefficiency Attendant to Duplicate Suits Favors Transfer

22.     It is unlikely that Mr. Martinez is subject to personal jurisdiction in Texas. Consequently, if this case is not transferred, Mr. Dworak will likely have to pursue two distinct lawsuits–one against defendant, Mr. Martinez, in a Florida court and one against the Red Cross in a Texas court. This potential reality favors transfer to Florida because there a complete disposition of this dispute would require only one lawsuit and consume the time and resources of only one court in Florida. *See Houston Trial Reports,* 85 F.Supp. 2d at 671; *Andrade v. Chojnacki*, 934 F.Supp. 817, 834 (S.D. Tex. 1996)(holding that transfer was favored when such transfer would eliminate the need for multiple litigation of the same set of operative facts). The case against the Red Cross and Mr. Martinez involves the same operative facts. This civil action has at its base the use of a Red Cross ERV, food trays in the same ERV, Mr. Martinez' driving, and Mr. Dworak's stowage of the food trays. The factual issues in the case against the Red Cross in Texas and against Mr. Martinez in Florida would involve the same witnesses, the same, or similar, documents, and the same ERV.

23.     Assuming no transfer, the federal court system would have to provide a forum in Brownsville, Texas for plaintiff's suit against the Red Cross. The state of Florida or the federal court system would have to provide an additional forum for plaintiff's suit against Mr. Martinez. To permit this result would waste the time, energy, and money of the parties, the federal government, possibly the state government, and all the taxpayers. This result would not be a fair and efficient administration of justice. It is better, more efficient, and less wasteful of scarce government resources to transfer the case to Florida, where plaintiff's suit could be dealt with in one court at the same time. *See Houston Trial Reports,* 85 F.Supp. 2d at 671. This public interest factor heavily favors transfer.

11

## 2. Florida's Overwhelmingly Greater Interest in this
## Local Controversy Favors Transfer

24.    Florida has a greater interest than Texas in seeing this controversy to its conclusion. *See McBee v. Howe*, 1989 WL 28680,*3(D.N.J. 1989)("certainly Florida has a greater interest in litigating claims which arise from automobile accidents occurring on its roadways than does [the state where the plaintiff resides.]").   In this case, the accident occurred in Florida while the Red Cross and its volunteers were assisting the citizens of Florida in the wake of a natural disaster. Because of the many natural disasters that occur in Florida, the Red Cross maintains a nearly perpetual presence there.   The behavior of Red Cross volunteers and the conduct of Red Cross volunteers in the streets and highways of Florida are interests unique to Florida.   Indeed, the everyday actions of the Red Cross and its volunteers touch the affairs of many Floridians.  The Red Cross and its volunteers in its vehicles are up and down the streets and highways of Florida transporting supplies and food to various disaster areas.   Consequently, the state of Florida, not Texas, has the supreme interest in guaranteeing that the Red Cross and its volunteers comply with Florida traffic laws.  Certainly, Florida's interest is superior to that of Texas, where Florida would play host forum to a suit in which the Red Cross and one of its volunteers when sued in connection with their relief efforts in the aftermath of a natural disaster in Florida. *See TV-3, Inc.*, 28 F.Supp.2d at 413.   Additionally, Floridians have a keen interest in monitoring alleged wrongdoing of its residents–the Red Cross and Red Cross volunteers.  Floridians have a unique understanding of the emergency conditions that exist in Florida after a hurricane.  Floridians have a similar understanding of the manner in which the Red Cross and its volunteers operate under these conditions.  They, not the people of Texas, have a paramount interest in the way the Red Cross and its volunteers, while operating in Florida, are treated in courts of law.  The fact that Florida has an overwhelming public

12

interest in the resolution of this lawsuit favors transfer.

### 3. The Burden on a Disinterested Texas Jury Favors Transfer to Florida

25.    Another public interest factor that favors transfer is the local burden associated with jury duty. It is a burden that should not be imposed on a community with little interest in the dispute. *See Koehring Co.*, 324 F.2d at 296. The resolution of this case does not impact the affairs of the state of Texas and its citizens the way it does the people of Florida. There is a strong public interest in having this local controversy resolved in the presence of the citizens of Florida rather than Texas residents – a venue remote and far removed from their view. *See id.* Coupled with a strong public interest, it is the responsibility of Florida, not Texas, to sit in judgment of this controversy. A Florida jury has a greater interest in seeing that the Red Cross and its volunteers conform to the driving laws of Florida, than does a Texas jury. In contrast, Texas citizens should not be burdened with jury duty where their interest is so minute. This factor favors transfer.

### 4. Florida Court's Familiarity with Governing Law Favors Transfer

26.    It is judicially desirable to have a court most familiar with the applicable law decide the case. *See TV-3, Inc.*, 28 F.Supp.2d at 413; *Hernandez*, 761 F.2d at 991. The Florida court will not only be familiar with the choice-of-law rules that will govern this case, but also it will know, intimately, the applicable substantive law–the law of its home state of Florida. This factor favors transfer. Here, the Florida district court would be bound to apply the choice-of-law rules of Texas. *Van Dusen*, 376 U.S. at 639, 84 S.Ct. at 821; *Ferens v. John Deere Co.*, 494 U.S. 516; 110 S.Ct. 1274 (1990). Applying Texas choice-of-law rules will present no problem for the Florida federal court because Florida and Texas have the same choice-of-law rules–both states apply the Most Significant Relationship Test. *See In re Air Disaster at Ramstein Air Base Germany*, 81 F.3d 570,

13

576 (5th Cir. 1996).

27.    After the application of these familiar choice-of-law rules, the Florida court would most certainly decide that Florida is the state with the most significant relationship to this case. Consequently, Florida substantive law would apply. Indeed, a Texas court applying Texas choice-of-law rules, selected the substantive law of Florida to resolve a controversy very similar to this one. *See Crisman v. Cooper Industries, Inc.*, 748 S.W.2d 273, 282 (Tex. App.-Dallas 1988, writ denied). Thus, to determine which substantive law applied to this case, a Florida court would apply the same test a Texas court would, the result of which would most likely be that Florida substantive law applies. This factor favors transfer. *See Kreisner v. Hilton Hotel Corp.*, 468 F.Supp. 176, 179 (E.D.N.Y. 1979)("[w]hile there may not be novel or complex issues of State law to be resolved, construction of State law is best left to courts most familiar with it.").

### III.  CONCLUSION

As set forth in detail above, most of the private and all of the public factors weigh heavily in favor of transfer. Therefore, the Red Cross requests that this Court transfer this case, in its entirety, to the Southern District of Florida, Miami Division.

14

Respectfully submitted,

WATT, BECKWORTH & THOMPSON, L.L.P.

BY: _____
John B. Beckworth
State Bar #02021500
Fed. I.D. #1546
1010 Lamar, Suite 1600
Houston, Texas  77002
Telephone: 713/650-8100
Facsimile: 713/650-8141

*Attorney-in-Charge for*
*The American National Red Cross, Defendant*

OF COUNSEL:

Neal Nobles
State Bar #24007753
Fed. I.D. #23078
WATT, BECKWORTH & THOMPSON, L.L.P.
1010 Lamar, Suite 1600
Houston, Texas  77002
Telephone: 713/650-8100
Facsimile: 713/650-8141

15

## CERTIFICATE OF SERVICE

A copy of the foregoing was sent to all known counsel of record via certified U.S. mail, return receipt requested, this 24th day of _April_, 2002.

R.W. Armstrong
R.W. Armstrong & Associates, Inc.
2600 Old Alice Road, Suite A
Brownsville, Texas 78521

Mr. Michael R. Cowen
Michael R. Cowen, P.C.
765 E. 7th Street, Suite A
Brownsville, Texas 78520-5317

John H. Beckworth

16

A



CAUSE NO. 4001-10-4511

| RICHARD DWORAK | § | IN THE DISTRICT COURT OF |
| | § | |
| VS. | § | CAMERON COUNTY, TEXAS |
| | § | |
| AMERICAN RED CROSS | § | |
| & HENRY MARTINEZ | § | 103ᵀᴴ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES Plaintiff **RICHARD DWORAK** and files this his Plaintiff's Original Petition, alleging discovery is to be conducted under Level 2, complaining of Defendant **AMERICAN RED CROSS and HENRY MARTINEZ** and for cause of action would respectfully show the Court and Jury the following:

### I.

### PARTIES

a. Plaintiff **RICHARD DWORAK** is an individual residing at Star Route Box 10, Port Isabel, Texas 78578.

b. Defendant **AMERICAN RED CROSS** is a non-profit organization that provides disaster relief to different parts of the United States. This defendant will be served by private process by serving their registered agent "American Red Cross" 2700 S.W. Freeway, Houston, Texas 77098.

c. Defendant **Henry Martinez** is an individual that resides in the State of Florida and no service will be made at this time.

EXHIBIT

A

## II.

## NATURE OF THE CASE

Plaintiff **Richard Dworak** brings this suit to recover damages for personal injuries sustained by him in a collision occurring in Miami, Florida, on, October 30, 1999.   At the time in question, Plaintiff **Richard Dworak** was a volunteer with the Defendant **American Red Cross**. Plaintiff **Dworak** was volunteering his time by serving food from a South Texas Chapter vehicle, of the American Red Cross.  Plaintiff Dworak was a passenger in the back of the van operated by another American Red Cross volunteer Henry Martinez when the van turned a corner causing improperly secured food trays to hit plaintiff Dworak while seated in the van.

## III.

## VENUE

Venue is proper in Cameron County pursuant to TEX.CIV.PRAC.AND REM.CODE ANN. §15.001 (Vernon 1997) as the plaintiff resides in Cameron County, Texas and the Defendant's primary place of business in Corpus Christi, Texas.

## IV.

## FACTS

On or about October 30, 1999, Plaintiff **Richard Dworak**, was a passenger in a van owned by the **Defendant American Red Cross of the South Texas Chapter.** The Emergency Rescue Vehicle "E.R.V." owned and operated by the American Red Cross was being operated by American Red Cross volunteer Henry Martinez.  The "E.R.V." turned a corner swerved to the right causing several heavy plastic food trays which were improperly secured to become dislodged and land onto Plaintiff Richard Dworak's body and chest while he was seated in the back of the "E.R.V."

## V.

### FIRST CAUSE OF ACTION
### DEFENDANT HENRY MARTINEZ'S NEGLIGENCE

The occurrence made the basis of this suit and the resulting injuries and damages were proximately caused by the negligent conduct of Defendant Henry in one or more of the following respects:

a.    in driving the "E.R.V." van at a rate of speed which was greater than that which an ordinarily prudent person would have driven under the same or similar circumstances;

b.    in failing to turn the "E.R.V." van in an effort to avoid the sudden swerve;

c.    in failing to secure the equipment within the South Texas Chapter American Red Cross "E.R.Vehicle".

## VI.

### SECOND CAUSE OF ACTION
### RESPONDEAT SUPERIOR

At the time of the incident made the basis of this action, Defendant American Red Cross was the employer of Defendant Henry Martinez. At the time of the incident made the basis of this action, Defendant Henry Martinez was operating the Emergency Rescue Vehicle, in the scope and course of the operations with the Defendant American Red Cross. In this regard, Defendant Henry Martinez was traveling on a special mission on the orders of the Defendant American Red Cross. In the alternative, Defendant Henry Martinez was acting in the scope of his duties for Defendant American Red Cross by operating the Emergency Rescue Vehicle so as to serve hot meals to the public in Miami, Florida. Defendant American Red Cross is therefore liable, according to doctrine of respondeat superior, for the negligent actions of its employee, Defendant Henry Martinez.

## VII.

## THIRD CAUSE OF ACTION
## DEFENDANT AMERICAN RED CROSS' NEGLIGENCE

The occurrence made the basis of this suit and the resulting injuries and damages were proximately caused by the negligent conduct of Defendant American Red Cross in one or more of the following respects:

b.   in failing to properly train their employees in how to operate the Emergency Rescue Vehicle in question;

c.   in failing to properly supervise their employees operating the Emergency Rescue Vehicle;

d.   in failing to properly instruct their employees in how to secure the equipment and food trays in the Emergency Rescue Vehicle;

d.      in failing to properly train their employees in how to secure the equipment and food trays in the Emergency Rescue Vehicle;

## VIII.

## DAMAGES

As a result of the negligent conduct of the Defendants, Plaintiff **Richard Dworak** suffered severe bodily injuries to his chest, heart pacemaker, lungs, ribs, right shoulder, neck, and back. Plaintiff has experienced physical pain and mental anguish and will, in reasonable probability, continue to suffer as a result of his injuries. Plaintiff has incurred reasonable and customary doctor's and medical expenses in the past and in reasonable probability, Plaintiff will incur additional reasonable expenses for necessary medical care and attention in the future. By reason of the foregoing injuries and damages, Plaintiff has been damaged in a sum of SEVENTY FOUR THOUSAND AND 00/100 DOLLARS ($74,000.00).

WHEREFORE, PREMISES CONSIDERED, Plaintiff requests that Defendants be cited to appear and answer herein and that upon final trial Plaintiff has:

(1)      Judgment against Defendants for actual and compensatory damages in an amount of $74,000.00, together with pre-judgment interest at the highest legal rate;

(2)     post-judgment interest at the highest legal rate;

(3)     all costs herein expended; and

(4)     such other and further relief, general or special, at law or in equity, to which Plaintiff may show himself justly entitled.

RESPECTFULLY SUBMITTED,

**R.W. ARMSTRONG & ASSOCIATES, INC.**
2600 Old Alice Road, Suite A
Brownsville, Texas 78521
Telephone (956) 546-5556
Telecopier (956) 546-0470

R. W. Armstrong
TBA#01323500

1989 WL 28680
**(Cite as: 1989 WL 28680 (D.N.J.))**

Only the Westlaw citation is currently available.


United States District Court, D. New Jersey.

George F. McBEE and Margaret N. McBee,
Plaintiffs,
v.
Frank R. HOWE, Forest Earl Howe, Maria G.
Kalatzis and Bill Georgiou,
Defendants.

**CIV. No. 88-3640 (CSF).**

March 20, 1989.


OPINION

CLARKSON S. FISHER, Senior District Judge.

*1 This litigation stems from an automobile accident which occurred on October 16, 1987, on state route 93 in Marion County, Florida. The incident involved three motor vehicles. Plaintiff, George McBee, the owner and operator of one of the automobiles, instituted this action on August 18, 1988, against the defendants, Frank R. Howe, Forest Earl Howe (the "Howe defendants"), Maria G. Kalatzis and Bill Georgiou, each of whom either owned or operated one of the other automobiles at the time of the accident. The matter is now before the court on motion by the Howe defendants to transfer venue to the United States District Court for the Middle District of Florida, pursuant to 28 U.S.C. § 1404(a). For the reasons stated below, defendant's motion to transfer venue is granted.

Jurisdiction over this action is based solely on diversity of citizenship. Pursuant to 28 U.S.C. § 1391, when jurisdiction over a civil action is founded only on diversity of citizenship, venue is proper only where all plaintiffs reside, where all defendants reside or where the cause of action arose. In the instant case, plaintiffs reside in New Jersey, defendant Forest Earl Howe resides in Georgia, defendant Frank R. Howe resides in North Carolina, defendants Maria G. Kalatzis and Bill Georgiou both reside in Florida, and the cause of action (*i.e.,* the alleged negligence) arose in Florida. Because the various defendants reside in three different states, venue is proper only in New Jersey (where all the plaintiffs reside) or in Florida (where the cause of action arose). At issue is whether the district court for the Middle District of Florida is a more appropriate forum for this litigation.

The Howe defendants assert that the following factors weigh heavily in favor of transferring this lawsuit to Florida: 1) the cause of action arose in Florida; 2) law-enforcement officers, medical personnel and many of the eyewitnesses to the accident either reside or do business in Florida; 3) a view of the scene of the accident may be required; 4) the law of Florida will govern this action; and 5) both plaintiff and the defendants are parties to pending litigation in Florida arising out of the same incident and have already retained Florida counsel to represent them in these actions. Plaintiffs oppose the transfer on the ground that the witnesses they intend to call with respect to liability (the passengers in the McBee vehicle) and damages (George McBee's treating physicians) all reside in New Jersey. The heart of plaintiffs' objection to the transfer is their contention that the bulk of their case will revolve around the issue of damages, and obtaining the presence of George McBee's New Jersey doctors in Florida would be "prohibitive."

The goal of 28 U.S.C. § 1404(a) is to "prevent the waste of 'time, energy and money' and 'to protect litigants, witnesses and the public against unnecessary inconvenience and expense.' " *Van Dusen v. Barrack,* 376 U.S. 612, 616 (1964), *quoting Continental Grain Co. v. Barge FBL-585,* 364 U.S. 19, 26-7 (1960); *Hardaway Constructors Inc. v. Conesco Indus.,* 583 F.Supp. 617, 619 (D.N.J.1983). To effect this goal, the statute empowers a district court to transfer an action from its district to another when circumstances warrant such a transfer. In relevant part, 28 U.S.C. § 1404 states:

*2 (a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

The power to transfer, however, is limited by the language of the statute which restricts the transfer to those federal districts "where [the action] might have been brought." *See Van Dusen v. Barrack,* 376 U.S. at 616; *Shutte v. Armco Steel Corp.,* 431 F.2d 22, 24 (3d Cir.1970), *cert. denied,* 401 U.S. 910 (1971). Thus, the threshold issue on a motion to transfer is whether the action could have been commenced in the district court to which transfer is sought. Before ordering a transfer, a district court must first determine that venue

would be proper in the transferee district and that the transferee court has jurisdiction over both the subject matter of the action and the defendants. *Shutte v. Armco Steel Corp., supra.*

As noted earlier, venue is proper in the Middle District of Florida because that is where the alleged tortious conduct took place. *See* 28 U.S.C. § 1391(a) (venue is proper where the cause of action arose). Since there is complete diversity between the plaintiffs and all of the defendants, and plaintiffs have alleged an amount in controversy over the required jurisdictional amount, jurisdiction over the action can properly be based on 28 U.S.C. § 1332, diversity of citizenship. With regard to personal jurisdiction over the defendants, two of the defendants, Maria G. Kalatzis and Bill Georgiou, are residents of Florida. Although the Howe defendants do not reside in Florida, they assert sufficient minimum contacts with the state as a result of their business ties with Florida such that the exercise of personal jurisdiction over them by the Florida district court will not offend due process. In fact, the Howe defendants have already accepted service of process in the other Florida actions arising out of the same incident. The court is thus satisfied that this lawsuit could have been commenced in the transferee forum.

Section 1404(a) sets forth the three primary considerations which a court must take into account when deciding a motion to transfer--the convenience of the parties, the convenience of the witnesses and the interests of justice. 28 U.S.C. § 1404(a). The analysis required by a § 1404(a) motion, however, is much the same as that required when determining a *forum non conveniens* motion, and the same factors relevant to the latter apply to the former. [FN1] *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955); *Hardaway Constructors Inc. v. Conesco Indus.,* 583 F.Supp. at 619. In *Gulf Oil Corp. v. Gilbert,* the Supreme Court outlined the following factors as important considerations when deciding a *forum non conveniens* motion:

1. the relative ease of access to sources of proof;

2. the availability of compulsory process for attendance of unwilling witnesses;

3. the cost of attendance at trial by willing witnesses;

*3 4. the possibility of a view of the premises, if a view would be appropriate to the action;

5. all other practical problems that make trial of a case easy, expeditious, and inexpensive; and finally,

6. the "public interest" factor, including the relative congestion of court dockets, choice of law considerations and the relation of the community in which the courts and jurors are required to serve to the occurrences that give rise to the litigation.

330 U.S. 501, 508-09 (1947); *see also Hathi v. Frischer,* 645 F.Supp. 360, 361-62 (E.D.Pa.1986).

A paramount consideration in determining whether to permit a transfer is always plaintiff's choice of forum, and unless the balance tips heavily in favor of transfer, the plaintiff's choice of forum should not be disturbed. *Gulf Oil Corp. v. Gilbert,* 330 U.S. at 508; *Shutte v. Armco Steel Corp.,* 431 F.2d at 25; *Hathi v. Frischer,* 645 F.Supp. at 362. The deference given to plaintiff's choice of forum is lessened, however, where, as here, the chosen forum lacks significant contacts with the conduct giving rise to the cause of action. *Luca Oil Drilling Co. v. Gulf Oil Corp.,* 593 F.Supp. 1198, 1200 (W.D.Pa.1984); *Hardaway Constructors, Inc. v. Conesco Indus.,* 583 F.Supp. at 616. Nonetheless, the moving party bears the burden of clearly demonstrating that a balancing of the interests weighs in favor of transfer. *Shutte v. Armco Steel Corp.,* 431 F.2d at 25; *Luca Oil Drilling Co. v. Gulf Oil Corp.,* 593 F.Supp. at 1200.

After weighing the relevant factors, the court finds that the convenience of the parties and the witnesses, together with the interests of justice, require that this action be transferred to the Middle District of Florida. At the outset, the court notes that the state of Florida has significantly more contacts with the conduct which underlies this cause of action. The accident occurred on a state highway in Marion County, Florida. Certainly, Florida has a greater interest in litigating claims which arise from automobile accidents occurring on its roadways than does New Jersey. In addition, the Howe defendants have asserted, and plaintiffs do not deny, that since the tortious conduct occurred in Florida, Florida state law will apply. In *Gulf Oil Corp. v. Gilbert,* the Supreme Court noted:

There is an appropriateness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself.

330 U.S. at 509. Because district courts regularly apply the laws of other states, this factor alone is not sufficient to warrant a transfer, [FN2] however, the court finds other compelling reasons which justify a transfer.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

First, because the accident occurred in Florida, there is greater access in that jurisdiction to sources of proof with regard to the medical records and police reports made following the accident. Second, in addition to two of the defendants, law-enforcement officers and the medical personnel involved, the Howe defendants list at least six other witnesses to the accident who reside in Florida. [FN3] *See* Penson Aff., ¶ 14. The court notes that should these witnesses be unwilling to appear before a New Jersey court, compulsory service of process will be unavailable because they are beyond the subpoena power of this court. Moreover, even if these witnesses are willing to travel to New Jersey, the cost of obtaining their presence here will be extremely burdensome to the Howe defendants.

*4 Plaintiffs argue, however, that they will be unfairly burdened by the transfer, because two of their eyewitnesses to the accident, passengers in plaintiffs' vehicle, are New Jersey residents. [FN4] In addition, plaintiffs assert that obtaining the presence of their key witnesses on the issue of damages, George McBee's treating physicians, in Florida will be "prohibitive." The court is unpersuaded by these arguments. There is nothing before the court which indicates that any of these witnesses would be unwilling to testify before a Florida court. Furthermore, the cost of producing these witnesses in Florida is far less burdensome than the cost of obtaining the presence of a greater number of Florida witnesses in New Jersey. [FN5]

On balance, the court finds that the above factors weigh strongly in favor of transfer. Transfer is even more compelling when these same factors are viewed in light of the various actions already pending in Florida courts which arise out of this same incident. While they might not be of plaintiffs' choosing, plaintiffs have already retained Florida counsel to represent them, and all of the parties to this action, as well as many of the witnesses in this litigation, will be required to appear in the Florida actions as well.

The court notes that defendants, in their reply papers, have raised for the first time the issue of this court's ability to exercise personal jurisdiction over them. Because the court has determined that transfer to the Middle District of Florida is warranted by the facts of this case, and the transferor court need not have personal jurisdiction over the defendant to effect a transfer under 28 U.S.C. § 1404(a), *Schwilm v. Holbrook*, 661 F.2d 12, 15 (3d Cir.1981), this issue will not be addressed.

Accordingly, for the reasons stated above, the Howe defendants' motion to transfer this litigation to the Middle District of Florida is granted. An order

accompanies this opinion. No costs.

## ORDER

This matter having been opened to the court on motion by Meth & Woehling, counsel on behalf of defendants Frank R. Howe and Forest Earl Howe, to dismiss or transfer venue pursuant to 28 U.S.C. § 1404(a) to the district court for the Middle District of Florida; and the court having considered the papers submitted in support of and in opposition thereto and the arguments of counsel; and for good cause shown,

IT IS on this 20th day of March, 1989,

ORDERED that defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) is granted, and this action is hereby transferred to the United States District Court for the Middle District of Florida.

FN1. Although the same principles underly both the *forum non conveniens* doctrine and the statute authorizing transfer of venue, a lesser showing of inconvenience is required under § 1404(a), and a district court's discretion in granting a transfer under § 1404(a) is broader than when it is determining whether to allow a transfer pursuant to the doctrine of *forum non conveniens. Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981); *Norwood v. Kirkpatrick, supra; Hardaway Constructors Inc. v. Conesco Indus., supra.*

FN2. *See Turrett Steel Corp. v. Manuel Int'l, Inc.,* 612 F.Supp. 387, 390 (W.D.Pa.1955).

FN3. The court is aware that several other witnesses who may be called reside in states other than New Jersey or Florida. Because the practical and financial burden of obtaining the presence of these witnesses remains the same regardless of whether the suit is heard in New Jersey or Florida, the court has not considered them a factor in deciding whether to transfer this case to Florida.

FN4. The third passenger in plaintiffs' automobile was Margaret McBee, a party to this lawsuit.

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

FN5. With regard to plaintiffs' damage witnesses, the court is mindful that liability witnesses are considered more crucial to a trial, and their convenience is given more weight than that of damage witnesses. *Kahhan v. City of Fort Lauderdale*, 566 F.Supp. 736, 739 (E.D.Pa.1989).

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works

2002 WL 75660
--- F.Supp.2d ----
**(Publication page references are not available for this document.)**

United States District Court,
S.D. Texas,
Galveston Division.

Geoffrey MCGINNIS, Individually and as Next
Friend of Geoffrey McGinnis, Jr.,
Caitlin McGinnis, and Brandon McGinnis, Plaintiff,
v.
ELI LILLY AND COMPANY, Defendant.

**No. CIV.A.G-01-597.**

Jan. 10, 2002.

Husband sued pharmaceutical company which manufactured antidepressant medication taken by wife, alleging that wife's use of medication caused her to commit suicide, and asserting claims for strict products liability, negligence, negligence per se, and breach of implied warranty. On company's motion to transfer venue, the District Court, Kent, J., held that convenience of witnesses and fact that alleged wrong occurred in transferee district warranted transfer of venue.

Motion granted.

West Headnotes

**[1] Federal Courts** ⚖️**144**
170Bk144 Most Cited Cases

Defendant bears burden of demonstrating to court that it should transfer venue of case. 28 U.S.C.A. § 1404(a).

**[2] Federal Courts** ⚖️**103**
170Bk103 Most Cited Cases

**[2] Federal Courts** ⚖️**819**
170Bk819 Most Cited Cases

Decision to transfer venue of case rests within sound discretion of district court, and such determinations are reviewed under abuse of discretion standard. 28 U.S.C.A. § 1404(a).

**[3] Federal Courts** ⚖️**101**

170Bk101 Most Cited Cases

**[3] Federal Courts** ⚖️**104**
170Bk104 Most Cited Cases

**[3] Federal Courts** ⚖️**105**
170Bk105 Most Cited Cases

In determining whether **venue transfer** is warranted, court considers availability and **convenience** of **witnesses** and parties, **location** of counsel, **location** of pertinent books and records, cost of obtaining attendance of **witnesses** and other trial expenses, place of alleged wrong, possibility of delay and prejudice if **transfer** is **granted**, and **plaintiff's** choice of forum, which is generally entitled to great deference. 28 U.S.C.A. § 1404(a).

**[4] Federal Courts** ⚖️**113**
170Bk113 Most Cited Cases

**Transfer** of **venue** was warranted in products liability action by husband against pharmaceutical company which manufactured antidepressant medication taken by wife, alleging that wife's use of medication caused her to commit suicide; **key witnesses** were **located** in transferee **district**, were not subject to subpoena power of transferor **district**, and would have been grossly inconvenienced by 800 mile trip to transferor **district**, trial in transferee **district** was more cost efficient, and alleged wrong occurred in transferee **district**, since that is where wife used medication, and thus where company would have misrepresented, or failed to warn wife or her physician, of attendant risks. 28 U.S.C.A. § 1404(a).

**[5] Federal Courts** ⚖️**101**
170Bk101 Most Cited Cases

**Convenience** of **key witnesses** is most important factor in **motion** to **transfer venue**. 28 U.S.C.A. § 1404(a).

**[6] Federal Courts** ⚖️**101**
170Bk101 Most Cited Cases

**[6] Federal Courts** ⚖️**144**
170Bk144 Most Cited Cases

At absolute minimum, defendant seeking **transfer** of **venue** must identify **key witnesses** and provide brief

summary of their likely testimony in effort to demonstrate to court why it would be inconvenient for them to testify in forum chosen by plaintiff. 28 U.S.C.A. § 1404(a).

**[7] Federal Courts ⋘104**
170Bk104 Most Cited Cases

**Location** of counsel is factor entitled to least consideration on **motion** to **transfer venue**. 28 U.S.C.A. § 1404(a).

**[8] Federal Courts ⋘104**
170Bk104 Most Cited Cases

**Location** of books and records, as factor to be considered on **motion** to **transfer venue**, is not of paramount importance in personal injury action. 28 U.S.C.A. § 1404(a).

**[9] Federal Courts ⋘104**
170Bk104 Most Cited Cases

Place of alleged wrong is generally very important factor on **motion** to **transfer venue**. 28 U.S.C.A. § 1404(a).

Arnold Anderson Vickery, PC, Houston, TX, for **Plaintiffs**.

Douglas W. Poole, McLeod, Alexander, et al., Galveston, TX, for Defendant.

### ORDER GRANTING DEFENDANT'S MOTION TO TRANSFER VENUE

KENT, **District** Judge.

This is a pharmaceutical products liability action in which **Plaintiff** Geoffrey McGinnis ("McGinnis") claims that his wife's ingestion of Prozac, an antidepressant medication manufactured by Defendant Eli Lilly and Company ("Lilly"), caused her to commit suicide. Now before the Court is Defendant's **Motion** to **Transfer Venue** to the Western **District** of North Carolina. For the reasons articulated below, Defendant's **Motion** is hereby **GRANTED**.

### I.

**Plaintiff** Geoffrey McGinnis and his late wife Millie McGinnis ("decedent") began dating in high school in Southern California. After graduation, **Plaintiff** joined the United States Navy, and married decedent on June

29, 1990 near the naval base in Norfolk, Virginia. During the first several years of their marriage, the McGinnises lived in various **locations** throughout the country and the world. When **Plaintiff** completed his tour of duty, the McGinnises returned to Southern California, where they resided until July of 1999. At that time, the McGinnises moved to Ohio to be closer to **Plaintiff's** family. Two months later, the McGinnises uprooted for the final time together to Lenoir, North Carolina, where they lived until the time of Millie McGinnis' death.

The events immediately leading up to decedent's suicide all took place in North Carolina. On September 14, 1999, after suffering from bouts of depression and anxiety, decedent's friend, Susan Higgins, took decedent to meet with Thomas P. Hensley ("Hensley"), a licensed professional counselor at Foothills Area Program ("Foothills") in Morganton, North Carolina, for a "crisis intervention emergency assessment." Decedent explained to Hensley that she was under considerable stress induced by two recent moves, the birth of a premature child, and the drowning death of her son two years earlier. Based on Hensley's referral, decedent returned to Foothills on September 20, 1999 to see Kevin Kilbride, M.D. ("Dr. Kilbride"). During that visit, Dr. Kilbride diagnosed decedent with major depression and prescribed a thirty-day supply of Prozac. On October 3, 1999, less than two weeks after being prescribed Prozac, twenty-seven year old Millie McGinnis shot herself in the head on the front deck of her home in Lenoir, North Carolina while her children were playing in a nearby room. Immediately following the suicide, Plaintiff rushed his children to the home of his landlord, Tony C. Pennell ("Pennell"), while Caldwell County Sheriff's Detectives investigated the scene and took witness statements. Decedent's body was taken to Caldwell County Memorial Hospital, where it was examined by George L. Nichols, Jr., M.D. ("Dr. Nichols"). A postmortem blood sample was obtained from decedent's body and shipped to a toxicology laboratory in Chapel Hill, North Carolina. Following these tragic events, **Plaintiff** and his three children relocated to Houston, Texas. On October 1, 2001, **Plaintiff** filed suit in this Court alleging causes of action for strict products liability, negligence, negligence per se, and breach of implied warranty. On November 6, 2001, Lilly filed a **Motion** to **Transfer Venue**, to which this Court now turns.

### II.

[1] Defendant seeks a **transfer** pursuant to the Court's discretionary **venue** powers under 28 U.S.C. § 1404(a).

Section 1404(a) provides: "For the **convenience** of parties and **witnesses**, in the interest of justice, a **district** court may **transfer** any civil action to any other **district** or division where it might have been brought." 28 U.S.C. § 1404(a). Defendant bears the burden of demonstrating to the Court that it should **transfer** the case. *See Peteet v. Dow Chem. Co., 868 F.2d 1428, 1436 (5th Cir.1989)* (requiring the defendant to make a showing that the forum sought is more **convenient**); *Time, Inc. v. Manning, 366 F.2d 690, 698 (5th Cir.1966)* ("At the very least, the **plaintiff's** privilege of choosing **venue** places the burden on the defendant to demonstrate why the forum should be changed.").

[2] The decision to transfer a case rests within the sound discretion of the Court, and such determinations are reviewed under an abuse of discretion standard. *See Peteet, 868 F.2d at 1436* ("A motion to transfer venue is addressed to the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion."); *Jarvis Christian Coll. v. Exxon Corp., 845 F.2d 523, 528 (5th Cir.1988)* ("Decisions to effect a 1404 transfer are committed to the sound discretion of the transferring judge, and review of a transfer is limited to abuse of that discretion."); *Marbury-Pattillo Constr. Co. v. Bayside Warehouse Co., 490 F.2d 155, 158 (5th Cir.1974)* (declaring that whether to transfer venue is within the discretion of the trial court and will not be reversed on appeal absent an abuse of discretion).

[3] In determining whether a venue transfer is warranted, the Court considers the following factors: the availability and convenience of witnesses and parties; the location of counsel; the location of pertinent books and records; the cost of obtaining attendance of witnesses and other trial expenses; the place of the alleged wrong; the possibility of delay and prejudice if transfer is granted; and the plaintiff's choice of forum, which is generally entitled to great deference. *See, e.g., Henderson v. AT & T Corp., 918 F.Supp. 1059, 1065 (S.D.Tex.1996)* (Kent, J.); *Dupre v. Spanier Marine Corp., 810 F.Supp. 823, 825 (S.D.Tex.1993)* (Kent, J.); *Continental Airlines, Inc. v. American Airlines, Inc., 805 F.Supp. 1392, 1395-96 (S.D.Tex.1992)* (Kent, J.) (discussing the importance of the **plaintiff's** choice of forum in light of the policies underlying § 1404(a)).

[4] Lilly maintains that **Plaintiff's** case should be **transferred** to the Western **District** of North Carolina principally because: (1) all of the **key witnesses** excepting **Plaintiff** and decedent's parents reside in North Carolina; (2) the alleged wrong occurred in

North Carolina; (3) it would be more expensive to litigate this case in Galveston than in North Carolina; and (4) **Plaintiff** will not suffer undue delay or prejudice from a **venue transfer** since Defendant filed its **Motion** at such an early stage in the litigation. In response, **Plaintiff** points out that: (1) the most important **witnesses**, **Plaintiff** and his three children, reside in the Southern **District** of Texas; (2) other **key witnesses**, such as **Plaintiff's** and decedent's parents, live in **states** outside of North Carolina; (3) the remaining **witnesses** identified by Defendant are either not crucial for trial or will likely appear to testify at trial; (4) the alleged wrong occurred mostly at Lilly's headquarters in Indianapolis, Indiana; (4) **Plaintiff's** Counsel has offices in Houston, and Defendant's Counsel has offices in Galveston; and (7) **Plaintiff** will suffer undue delay and prejudice from a **venue transfer**.

*1. Availability and Convenience of the Witnesses and Parties*

[5][6] This Court has previously stated that the convenience of key witnesses is the most important factor in a motion to transfer venue. *See Gundle Lining Constr. Co. v. Fireman's Fund Ins. Co., 844 F.Supp. 1163, 1166 (S.D.Tex.1994); Continental Airlines, 805 F.Supp. at 1396.* At an absolute minimum, Defendant must identify key witnesses and provide a brief summary of their likely testimony in an effort to demonstrate to the Court why it would be inconvenient for them to testify in Galveston. *See LeBouef v. Gulf Operators, Inc., 20 F.Supp.2d 1057, 1060 (S.D.Tex.1998)* (Kent, J.). Without a realistic and comprehensive summary of the testimony, it is impossible for the Court to determine if a witness' appearance is cumulative or unnecessary for trial. In the instant case, Lilly emphasizes that the vast majority of key witnesses reside in North Carolina and therefore fall outside of the subpoena power of this Court. Lilly specifically identifies and summarizes the likely testimony of ten potential fact witnesses whose testimony is crucial for trial: Dr. Kilbride, the physician who prescribed Prozac to decedent; Thomas Hensley, the licensed professional counselor who referred decedent to Dr. Kilbride; Jimmy and Mildred Duke, decedent's parents who live in California; Brian and Susan Higgins, friends of the McGinnises with whom the McGinnises briefly lived while in Lenoir; Tony Pennell, the landlord of the McGinnises for a short period of time in Lenoir; Caldwell County Sheriff's Officers, particularly those who investigated the scene of decedent's suicide and took witness statements; Dr. Nichols, the doctor who examined and obtained a

postmortem blood sample from decedent's body; and the Office of the Chief Medical Examiner, where decedent's postmortem blood sample was analyzed. All of these witnesses, with the exception of decedent's parents, reside in or around Lenoir, North Carolina.

In its Response, Plaintiff attempts to characterize the witnesses identified by Lilly as inconsequential for trial, and argues instead that the most important witnesses to this dispute are Plaintiff and his three children, who currently reside in Houston, Texas; Brian and Susan Higgins, who are likely to appear for trial because of their friendly relationship with Plaintiff; and decedent's parents, who live in California. Plaintiff further asserts that the other witnesses identified by Lilly, including the mental health professionals who treated decedent, are incidental to the adjudication of this case, and that testimony presented by deposition, in lieu of testimony at trial, would suffice for all of these witnesses. The Court disagrees. Although Dr. Kilbride and Thomas Hensley may have met with decedent for only brief periods of time, they still represent the only mental health professionals to have treated and diagnosed decedent's depression. Not only is Dr. Kilbride the only known physician to have prescribed Prozac to decedent, the very drug that Plaintiff now claims caused his wife's death, but he is the only individual who can testify as to whether or not Lilly failed to warn and/or made material misrepresentations to him regarding Prozac's safety, as specifically averred by Plaintiff. In light of these compelling facts, it is bordering on absurd for Plaintiff to suggest that the testimony of either Dr. Kilbride or Thomas Hensley is somehow inconsequential to the resolution of this case.

The same can be said of decedent's friends and neighbors in Lenoir, North Carolina. Irrespective of the fact that decedent lived in Lenoir for only a month before committing suicide, the persons who interacted with her during that short period of time can provide unique testimony on decedent's mental health and well-being immediately prior to and following her ingestion of Prozac. These persons include Plaintiff and his oldest child, [FN1] Brian and Susan Higgins, and Tony Pennell. The Court recognizes that Plaintiff and his family, who now reside in Houston, may be inconvenienced by a transfer to North Carolina, but the Court is also keenly aware that Plaintiff and his oldest child are the *only* key witnesses identified by either Party who are subject to the subpoena power of this Court. Although Plaintiff muses that Brian and Susan Higgins would most likely appear at trial because of their friendly relationship with McGinnis, this is nothing more than mere conjecture. In addition, the

testimony of Caldwell County Sheriff's Officers who investigated the suicide scene, as well as those persons involved in examining decedent's body and postmortem blood sample, is also relevant, especially if Plaintiff challenges the results of the postmortem blood analysis, as Defendant speculates. The only other key witnesses identified by Plaintiff, including the parents of decedent and Plaintiff, are located in states other than North Carolina and Texas, making their places of residency unimpressive upon the venue analysis. Although the Court realizes that at least some witnesses' testimony would be more appropriately presented by deposition, a retention of this case would conceivably deprive Lilly of the opportunity to present any live witness testimony whatsoever-a result this Court is unwilling to impose. Furthermore, those witnesses who are willing to testify at trial without subpoena would be grossly inconvenienced by having to travel 800 miles to the Galveston Division courthouse, rather than approximately 50 miles to the nearest federal courthouse in the Western District of North Carolina. Viewed cumulatively, then, this factor weighs heavily in favor of a transfer to North Carolina.

In addition to assessing the availability and convenience of witnesses, the Court also considers the location of the Parties. Here, Plaintiff and his family reside in Houston, Texas, while Defendant is headquartered in Indianapolis, Indiana. While Plaintiff is located in the Southern District of Texas, the Court notes that he does *not* live in the Galveston Division, but rather the Houston Division. Furthermore, given Plaintiff's propensity for relocating, the permanency of Plaintiff's residency in Texas is dubious at best. As such, the Court places minimal weight upon Plaintiff's tenuous connection to the Galveston Division and the Southern District of Texas.

### 2. *Location of Counsel*

[7] Although this factor is entitled to the least consideration, the Court notes that it does "give some weight to location of counsel if Plaintiff chooses local counsel to bring the suit." *Dupre,* 810 F.Supp. at 826 (recognizing that the vast majority of cases hold that location of counsel is entitled to little or no consideration). In the case at hand, both Plaintiff and Defendant have employed local counsel in the Southern District of Texas, in Houston and Galveston respectively. Although bearing little consequence, this factor slightly supports retention.

### 3. *Location of Books and Records*

[8] The location of books and records is not of paramount importance in a personal injury action. *See id.* at 826-27 (noting that a personal injury suit is typically not the type of action where books and records are vital); *Continental Airlines,* 805 F.Supp. at 1397 (observing that in a personal injury case "it is unlikely that all ... relevant documents will be needed for trial, and ... documents can be produced and examined anywhere for discovery purposes"). In this case, neither Plaintiff nor Defendant have attempted to identify potential sources of proof or their relevance to this case. Thus, this factor does not impact the venue analysis.

### 4. Trial Expenses

Neither Party provides specific information on the expenses and costs associated with trial in Galveston versus North Carolina. However, because the vast majority of key witnesses reside in the Western District of North Carolina, the Court may reasonably conclude that a trial in North Carolina would be more cost efficient than its counterpart proceeding in Galveston. This factor therefore supports transfer.

### 5. Place of the Alleged Wrong

[9] The Court generally considers the place of the alleged wrong to be a very important factor in venue determinations. *See Henderson,* 918 F.Supp. at 1067 (observing that suits by nonresidents can serve to delay the trials of resident plaintiffs). However, "this factor, like the other factors, is only part of the equation." *Dupre,* 810 F.Supp. at 827. In the instant case, the Parties dispute the exact location of the alleged wrong. Defendant maintains that the wrong occurred in North Carolina, since Plaintiff bases his causes of action upon Lilly's material misrepresentations and/or failure to warn prescribing physicians and consumers (in this case, located in North Carolina) of the foreseeable risks associated with the administration of Prozac. In contrast, Plaintiff asserts that the wrong primarily took place at Lilly's headquarters in Indianapolis, Indiana, where the initial decision was made to mislead or not to warn physicians and consumers about the dangers of Prozac. The Court finds Plaintiff's argument wholly unconvincing. In its Complaint, Plaintiff avers that Millie McGinnis' death was proximately caused by Lilly's affirmative misrepresentations and/or failure to warn consumers, via their prescribing physicians or otherwise, of the risks involved in taking Prozac. In this case, then, the alleged wrong most likely occurred in North Carolina, since Lilly failed to warn and/or communicated false information to the prescribing physician, Dr. Kilbride, and the consumer, Millie McGinnis, in North Carolina. Even if this Court were to adopt Plaintiff's view that the alleged wrong occurred entirely in Indiana, this fact would still not support retention of the case in the Southern District of Texas. Thus, to the extent that the place of the alleged wrong can be ascertained, this factor weighs in favor of transfer.

### 6. Possibility of Delay and Plaintiff's Choice of Forum

Finally, a Plaintiff's decision to litigate his case in the Galveston Division of the Southern District of Texas is normally entitled to great deference. *See Peteet,* 868 F.2d at 1436; *Carlile v. Continental Airlines, Inc.,* 953 F.Supp. 169, 171 (S.D.Tex.1997) (Kent, J.); *see also United Sonics, Inc. v. Shock,* 661 F.Supp. 681, 683 (W.D.Tex.1986) (asserting that plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance is strongly in defendant's favor"). As a general rule, this is especially true when the Plaintiff resides in the Southern District of Texas. However, in the instant case, Plaintiff lives in the Houston Division of the Southern District of Texas and has no apparent connection to the Galveston Division. Although the Court is flattered that Plaintiff has selected this forum to redress his grievances, and deeply sympathizes with the tragic loss that Plaintiff's family has endured, there simply exists no basis for laying venue in Galveston. Instead, the utter dearth of contacts between Plaintiff's case and the Southern District of Texas exemplifies nothing less than blatant forum shopping. While the Court recognizes that a venue transfer may well result in Plaintiff losing the benefit of this Court's expeditious and cost- efficient manner of handling cases, the mere fact that Plaintiff may suffer some delay in having his claim adjudicated will not, in light of the totality of the circumstances, sufficiently militate against transfer.

### III.

After careful consideration of the relevant factors, and in light of the specific facts of this case, the Court concludes that Defendant has satisfied its burden of demonstrating that a transfer is necessary to serve the interests of justice and for the convenience of witnesses and parties. The Court upsets Plaintiff's choice of forum only to avoid the substantial inconvenience that Defendant would suffer by litigating this matter in Galveston rather than North Carolina. Plaintiff is not a resident of the Galveston Division, and almost all of the key witnesses in this case reside in North Carolina. Viewed cumulatively, then, the multiple venue factors

as enunciated in *Dupre* overwhelmingly indicate that this case would be more appropriately adjudicated in North Carolina. For all of the reasons stated above, Defendant's Motion to Transfer Venue is hereby **GRANTED**, and the case is hereby **TRANSFERRED** to the United States District Court for the Western District of North Carolina, Statesville Division.

**IT IS SO ORDERED.**

> FN1. Two of decedent's children were under the age of two years old at the time of their mother's suicide. As a result, only the oldest McGinnis child could possibly provide any useful testimony on the circumstances surrounding Millie McGinnis' death.

END OF DOCUMENT

Copr. © West 2002 No Claim to Orig. U.S. Govt. Works